UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**JOHNNY A. MCDONALD**                                                                **PLAINTIFF**

v.                                              **CIVIL ACTION NO. 4:17-CV-P138-JHM**

**GREEN RIVER CORRECTIONAL COMPEX** *et al.,*               **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion for summary judgment by Defendants Lessye Crafton, Karen Casey, and Timothy Groves (DN 62) and a motion for summary judgment by Defendant Grant Penrod (DN 66). For the following reasons, the Court will grant these motions.

**I.**

Plaintiff Johnny McDonald initiated this *pro se* 42 U.S.C. § 1983 prisoner civil-rights action in October 2017 regarding events that occurred during his incarceration as a convicted prisoner at Green River Correctional Complex (GRCC). On initial review of the action pursuant to 28 U.S.C. § 1915A, the Court dismissed several claims but allowed Eighth Amendment claims for deliberate indifference to a serious medical need to proceed against Defendants APRN Lessye Crafton, Nurse Karen Casey, and Nurse Timothy Groves,[1] and GRCC Case Treatment Officer Grant Penrod. Plaintiff alleged that these Defendants denied him appropriate treatment for his chronically high blood pressure.

---

[1] These three Defendants are employees of Correct Care Solutions (CCS). CCS has ostensibly contracted with the Kentucky Department of Corrections (KDOC) to provide medical services to the inmates at GRCC.

## II.

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard that the Court reviews the facts presented.

**III.**

In their motions for summary judgment, Defendants argue that they are entitled to summary judgment both because Plaintiff failed to exhaust his administrative remedies and on the merits of Plaintiff's claims against them. Plaintiff does not address Defendants' exhaustion arguments in his response.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), which Defendants have the burden to plead and prove by a preponderance of the evidence.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). The point of the PLRA exhaustion requirement is to allow prison officials "a fair opportunity" to address grievances on the merits, to correct prison errors that can and should be corrected, and to create an administrative record for those disputes that eventually end up in court. *Woodford*, 548 U.S. at 94-95. "Requiring inmates to exhaust prison remedies in the manner the State provides - by, say, identifying *all* relevant defendants - not only furthers these objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the

process." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) (citing *Woodford*, 548 U.S. at 94-96). Thus, the Sixth Circuit has held that "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (citing *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009)).[2]

KDOC's Inmate Grievance Procedure, Corrections Policies and Procedures (CPP) 14.6, provides a procedure for "regular" grievances, CPP 14.6(II)(J), and a separate procedure for grievances related to health care, CPP 14.6(II)(K). The first step in both procedures requires an inmate to file a grievance which meets the following requirements: "The grievant shall include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1." CPP 14.6(II)(J)(1)(a)(5); CPP 14.6(II)(K)(1)(a)(4). If a regular grievance is filed, the parties must attempt to resolve the conflict informally, but if the inmate is unsatisfied with the outcome, he or she can make a written request for a hearing to the Grievance Committee. CPP 14.6(II)(J)(2). The Grievance Committee makes a recommendation following the hearing, and if the inmate is also unsatisfied with the Committee's recommendation, an appeal can be filed with the Warden. CPP 14.6(II)(J)(3). A prisoner may appeal to the Commissioner of the KDOC if he does not agree with the decision by the Warden. CPP 14.6 (II)(J)(4). A grievance is exhausted when the Commissioner issues a decision.[3]

---

[2] Courts have recognized exceptions to this rule but none are present here. *See Reed-Bey*, 603 F.3d at 324 (recognizing an exception to the prison's name requirement where the prison did not enforce that rule); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009) (contemplating an exception to the prison's name requirement where the prison conceals the name of the relevant official from the prisoner such that he is unable to reference the official in his grievance); *Calhoun v. Hill*, No. 07-11613, 2008 U.S. Dist. LEXIS 70382, at *3 (E.D. Mich. Sept. 17, 2008) (contemplating an exception to the prison's name requirement where it is obvious from the facts alleged in the plaintiff's grievance that the unnamed prison official was involved in the grieved incident).

[3] If a grievant is not satisfied with the outcome of a health care grievance during the informal resolution stage, he may then appeal to the Health Care Grievance Committee and then the Medical Director. CPP 14.6(II)(K).

According to the records submitted by Defendants, Plaintiff filed one grievance related to his medical needs while incarcerated at GRCC. Plaintiff filed this grievance on a "regular" grievance form on August 18, 2017. In the grievance, Plaintiff stated as follows:

> On 8-17-17 at 7:20 p.m.; C.O. Ms. Groves was working dorm 4 control desk when I tried to contact Ms. Groves six or seven times to tell the above officer that I was feeling dizzie and I wanted the above officer to call medical for me but the above officer had my intercom turned off; its against policy to have anyone of the intercoms turned off that's a health hazard an a security risk because anything could happen when the intercoms are turned off[.]

(DN 62-2, p. 5, Inmate Grievance Form).

In the "Action Requested" section of the grievance form, Plaintiff wrote, "I request that the proper actions be taken against this officer for the security of inmates." Plaintiff ultimately appealed this grievance to the Grievance Committee, the Warden, and the KDOC Commissioner. In his appeal to the Commissioner, the fourth step in KDOC's regular grievance process, Plaintiff mentions Defendant Penrod for the first and only time. Plaintiff wrote as follows on this appeal form:

> On September 27, 2017, I pressed the intercom button for 20 minutes trying to get medical help then I had to kick the door for another 20 minutes then CTO Grant Penrod came to my cell. I informed him that I need medical help immediately. I passed out on my cell floor when I came too; I seen the cert term at my cell door with medical, I asked what happened an staff informed me that I was out for 20 minutes . . . .

(DN 62-2, p. 9, Grievance Appeal Form).

The CCS Defendants' argument is straightforward. They argue that Plaintiff failed to exhaust his administrative remedies with regard to each of them because he never filed a grievance against them in accordance with KDOC's Grievance Procedure. Based upon the undisputed evidence, the Court agrees. Regardless of which type of grievance Plaintiff chose to file, the grievance he did file concerning his medical needs does not mention Defendant Crafton, Casey, or Nurse Timothy Groves. Thus, these Defendants are entitled to judgment in their favor.

5

Defendant Penrod argues that Plaintiff failed to exhaust his administrative remedies with regard to him because Plaintiff did not mention him until the fourth level of the regular grievance appeals process. He points out that this does not satisfy the procedural requirement that the grievance "shall include all aspects of the issue and *identify all individuals* in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with *during step 1*." CPP 14.6(II)(J)(1)(a)(5) (emphasis added). The Court agrees that Defendant Penrod should be granted summary judgment on this ground because KDOC's Grievance Procedure clearly states that all relevant individuals must be identified in the first step of the grievance process. Moreover, the incident concerning Defendant Penrod about which Plaintiff grieved in his appeal occurred over a month after the incident Plaintiff complained about in his original grievance. The Court agrees with Defendant Penrod that to comply with KDOC's Grievance Procedure and begin exhausting his remedies against him, Plaintiff should have initiated a new grievance against Defendant Penrod after the alleged incident concerning him occurred. *See, e.g.*, *Luther v. White*, No. 5:17-CV-138-TBR, 2019 U.S. Dist. LEXIS 20486, at *36-37 (W.D. Ky. Feb. 6, 2019) (concluding that the plaintiff had failed to exhaust under the same KDOC procedure where a defendant was not named in the original grievance but only on appeal).

Thus, the Court concludes that Defendants are entitled to summary judgment because they have met their burden and shown that Plaintiff failed to exhaust his claims against them. As such, the Court need not address Defendants' arguments regarding the merits of Plaintiff's claims.

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motions for summary judgment (DNs 62 & 66) are **GRANTED**.

The Court will enter a separate Judgment consistent with this Memorandum Opinion and Order.

Date: September 2, 2020

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:  Plaintiff, *pro se*
     Counsel of Record
4414.011